## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AYLO FREESITES LTD, <br><br> Plaintiff, <br><br> v. <br><br> DISH TECHNOLOGIES L.L.C. and SLING TV L.L.C., <br><br> Defendants. | Civil Action No. 24-086-GBW |

Kelly E. Farnan, RICHARDS, LAYTON & FINGER, Wilmington, DE; Frank M. Gasparo, Ralph A. Dengler, J. Daniel Kang, Ian G. Paquette, Parker G. Zimmerman, VENABLE LLP, New York, NY.

*Counsel for Plaintiff*

John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; G. Hopkins Guy, III, BAKER BOTTS L.L.P., Palo Alto, CA; Ali Dhanani, BAKER BOTTS L.L.P., Houston, TX; Jamie R. Lynn, BAKER BOTTS L.L.P., Washington, D.C.; Clarke Stavinoha, Kurt Pankratz, BAKER BOTTS L.L.P., Dallas, TX.

*Counsel for Defendants*

## MEMORANDUM OPINION

October 8, 2025
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendants DISH Technologies L.L.C. and Sling TV L.L.C.'s (collectively, "DISH") Motion to Dismiss Aylo Freesites' Complaint or, Alternatively, to Transfer ("Motion to Dismiss or Transfer"). D.I. 6. Defendants' Motion to Dismiss or Transfer has been fully briefed. D.I. 7; D.I. 9; D.I. 13.

Also before the Court is Plaintiff Aylo Freesites Ltd's ("Plaintiff" or "Aylo") Motion to Stay Pending *Inter Partes* Review ("Plaintiff's Motion to Stay Pending IPR") by the United States Patent and Trademark Office Patent Trial and Appeal Board ("PTAB"). D.I. 16. Plaintiff's Motion to Stay Pending IPR has also been fully briefed. D.I. 17; D.I. 19; D.I. 21.

Having considered the parties' arguments raised in briefing, the Court grants-in-part and denies-in-part Defendants' Motion to Dismiss or Transfer (D.I. 6). Specifically, the Court denies the motion with respect to Defendants' request for dismissal, but grants the motion with respect to Defendants' request for transfer. This case is transferred to the District of Utah. The Court denies-as-moot Plaintiff's Motion to Stay Pending IPR (D.I. 16). The Court sets forth its analysis below.

## I.    FACTUAL BACKGROUND

Plaintiff[1] is a foreign company organized under the laws of Cyprus, with a place of business in Cyprus. D.I. 1 at 2. Relevant here, Plaintiff also operates other entities under the Aylo name, including Aylo Premium Ltd and Aylo Billing Limited. *Id.* at 11–12. Plaintiff does not maintain

---

[1] Throughout this opinion, the Court uses "Aylo" to refer "to Aylo [Freesites Ltd] and other Aylo entities under the Aylo brand," including Plaintiff and other associated entities. D.I. 9 at 1, n.1. Individual Aylo entities (e.g., Plaintiff) are referred to directly by name. Aylo was formerly known as "Mindgeek" or "MG" prior to a corporate rebranding. D.I. 1 at 2.

any physical presence in Delaware and its relevant witnesses are located in Montreal, Canada. D.I. 9 at 16.

DISH Technologies L.L.C. and Sling TV L.L.C. are both organized under the laws of Colorado, where they maintain the same principal place of business. D.I. 1 at 2–3; D.I. 7 at 2.

This suit involves three patents—United States Patent Nos. 10,469,555 ("the '555 Patent"), 10,757,156 ("the '156 Patent"), and 11,470,138 ("the '138 Patent"), (collectively, the "Asserted Patents")—and a complicated series of litigations involving the parties. D.I. 1; *see* D.I. 1-1, Exs. A–C (copies of Asserted Patents). The Asserted Patents are directed toward streaming video content on the internet via adjustable bitrate ("ABR") technology that was "conceived, developed and commercialized" in Utah. D.I. 7 at 9. The Asserted Patents are owned by DISH Technologies L.L.C. and licensed exclusively to Sling TV L.L.C. *Id.* at 2. DISH has actively litigated its ABR portfolio in numerous litigations, including in the District of Delaware. D.I. 1 at 11.

On March 17, 2023, DISH sent a letter to Aylo accusing it of infringing at least one of the Asserted Patents. *Id.* at 10; *see* D.I. 1-1, Ex. H (letter).[2] This letter referenced litigation between DISH and other parties at the International Trade Commission ("ITC"). D.I. 1 at 10. Aylo responded on April 13, 2023, stating that it would "be in touch" with DISH. D.I. 1-1, Ex. I.

On July 7, 2023, DISH followed up by sending Aylo exemplary claim charts asserting that Aylo's "Pornhub streaming services" websites infringed claim 10 of the '555 Patent, claim 14 of the '138 Patent, and claim 1 of the '156 Patent. D.I. 1 at 10; D.I. 1-1, Exs. D–G. Aylo responded on July 12, 2023, that it would review the claim charts and reach out subsequently to "arrange a call." D.I. 1 at 10; D.I. 1-1, Ex. J.

---

[2] Specifically, this correspondence was signed on DISH Network L.L.C. letterhead. D.I. 1-1, Ex. H. The parties did not draw a distinction between this DISH entity and those in suit.

3

On the morning of July 25, 2023, DISH and Plaintiff agreed to meet to discuss the issues. D.I. 7 at 4. Later that same day, Plaintiff filed a complaint in the Northern District of California seeking a declaratory judgment that one of its websites did not infringe the Asserted Patents (the "NDCA Action"). *MG Freesites Ltd v. DISH Technologies L.L.C. et al*, No. 3:23-cv-03674-EMC (N.D. Cal.), D.I. 1; *see MG Freesites Ltd. v. DISH Techs. L.L.C.*, 712 F. Supp. 3d 1318, 1322 (N.D. Cal. 2024).

On August 22, 2023, amidst the then-ongoing NDCA Action proceedings, DISH filed a patent infringement action in the District of Utah against Aylo Premium Ltd and Aylo Billing Limited and several non-Aylo entities (the "First Utah Action"). D.I. 1 at 11–12. The First Utah Action complaint asserted six patents, including the '138 Patent, but did not include Plaintiff. *Id.* at 12; D.I. 7-2 (First Utah Action complaint).

On January 24, 2024, the Northern District of California dismissed the NDCA Action, finding that the court lacked personal jurisdiction over DISH. *MG Freesites Ltd. v. DISH Techs. L.L.C.*, 712 F. Supp. 3d 1318, 1322 (N.D. Cal. 2024). Later that same day, which is also the same day that Plaintiff commenced this action, DISH filed suit in the District of Utah against Plaintiff and 9219-1568 Quebec Inc. (the "Second Utah Action"). D.I. 7 at 6; D.I. 7-3 (Second Utah Action complaint).

The First Utah Action was stayed on May 24, 2024, when four of the six patents-in-suit were subject to *inter partes* reviews ("IPR") instituted by the PTAB. *DISH Techs. L.L.C. v. MG Premium Ltd*, No. 2:23-CV-00552, 2024 WL 2701609, at *1-2 (D. Utah May 24, 2024) ("Because a stay will simplify the issues, the case is young, and DISH will not be unduly prejudiced, Defendants' motion to stay is granted."). On March 31, 2025, the District of Utah denied Aylo's motion to dismiss or transfer the First Utah Action. *DISH Technologies LLC et al v. MG Premium*

*Ltd et al (D. Utah)*, No. 2:23-CV-552-HCN-DAO, D.I. 144. The District of Utah later lifted the

stay to decide DISH's motion for a preliminary injunction. That motion was denied. *Dish Techs.*

*LLC v. MG Premium Ltd*, No. 2:23-CV-552-HCN-DAO, 2025 WL 2061922, at *1 (D. Utah July

23, 2025).

The Second Utah Action was stayed on August 28, 2024, pending resolution of IPRs over

the patents-in-suit. *DISH Technologies L.L.C. et al v. Aylo Freesites Ltd et al*, No. 2:24-CV-

00066-DAK-JCB (D. Utah), D.I. 36.

## II.    PROCEDURAL HISTORY

Plaintiff commenced the instant suit on January 24, 2024. D.I. 1 (the "Complaint"). In the

Complaint, Plaintiff requests a declaratory judgment of noninfringement under 35 U.S.C. § 1, *et*

*seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. *Id.* at 1. On

February 21, 2024, DISH filed its Motion to Dismiss or Transfer. D.I. 6; D.I. 7. Two weeks later,

on March 6, 2024, Plaintiff filed its brief in opposition. D.I. 9. A week later, DISH filed its reply.

D.I. 13.

On June 14, 2024, Plaintiff filed its Motion to Stay Pending IPR. D.I. 16. As of April

2024, PTAB had instituted IPRs on the asserted claims of two of the Asserted Patents: claim 14 of

the '138 Patent and claim 10 of the '555 Patent, and more were pending. D.I. 17 at 2; D.I. 18-1,

Exs. A–B. Since the close of briefing on Plaintiff's Motion to Stay Pending IPR, the field has

shifted. On November 21, 2024, the PTAB instituted review of the '156 Patent following a petition

by third parties. D.I. 26 at 1; D.I. 26-1, Ex. A. On December 9, 2024, the USPTO granted Aylo's

*ex parte* reexamination request with respect to the '156 Patent. D.I. 26 at 1, D.I. 26-1, Ex. B.

Thus, all of the Asserted Patents are subject to instituted IPRs.

## III.    LEGAL STANDARD

### A.    Declaratory Judgment Act

"[A]ny court of the United States . . . *may* declare the rights and other legal relations of any interested party. . . ." 28 U.S.C. § 2201 (emphasis added).  "A declaratory action allows a party 'who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side.'" *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993)).  "[I]t is well settled by a multitude of cases that the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest." Charles Allan Wright & Arthur R. Miller, 10B Federal Practice & Procedure: Civil § 2759 (4th ed. 2022); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial....") (footnote omitted).

This Court must apply Federal Circuit case law when it determines whether to dismiss a declaratory judgment action in favor of "a later-filed suit for patent infringement. . . ." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton*, 515 U.S. 277; *Lab'y Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004) (same); *Elecs. for Imaging*, 394 F.3d at 1345 (similar).  The Federal Circuit has explained that district courts have discretion to dismiss declaratory judgment actions as long as they provide "well-founded reasons" for doing so, such as a "better or more effective" alternative remedy, and "act[ ] in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration. . . ." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1347 (Fed. Cir. 2022) (internal quotation marks and citations omitted).  "The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-

6

filed action is a declaratory action." *Elecs. for Imaging*, 394 F.3d at 1348 (quoting *Genentech*, 998 F.2d at 938).

When a district court decides whether to dismiss a declaratory judgment action, the court should consider "the reasonable apprehension created by a patentee's threats and the looming specter of litigation that results from those threats." *Id.* at 1347. The Court should also consider the following factors: "[1] whether a party intended to preempt another's infringement suit . . . [,] [2] 'the convenience and availability of witnesses, [3] [the] absence of jurisdiction over all necessary or desirable parties, [4] the possibility of consolidation with related litigation, [and] [5] considerations relating to the real party in interest.'" *Id.* at 1347–48 (citations omitted).

"The 'first-to-file' rule . . . generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (internal quotation marks and citation omitted). "Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a later-filed duplicative action." *Id.* The first-filed case must conduct the first-filed-rule assessment. *See Samsung Elecs. Co. v. Netlist, Inc.*, Civil Action No. 21-1453-RGA, 2022 WL 3027312, at *3 (D. Del. Aug. 1, 2022) (holding that, since the "Delaware case was filed before the Texas Action" the Delaware court should "take the lead"); *see also RPost Holdings, Inc. v. Yesware, Inc.*, NO. 2:13-cv-953-JRG, 2014 WL 12712410, at *2 (E.D. Tex. Sept. 4, 2014) (Gilstrap, J.). Courts in this District and other districts have dispensed with the first-to-file rule where "forum shopping was the only motive for the filing." *See Genentech*, 998 F.2d at 938.

"When one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a 'double dose' of discretion: discretion to decline to exercise

jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule and its equitable exceptions." *Commc'ns Test Design*, 952 F.3d at 1362.

### B.    Transfer of Proceedings Under Section 1404(a)

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). The Federal Circuit applies the law of the regional circuit on a motion to transfer pursuant to 28 U.S.C. § 1404(a). *See In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020). Courts in the Third Circuit evaluate a motion to transfer under the factors outlined in *Jumara v. State Farm Insurance*, 55 F.3d 873, 879–80 (3d Cir. 1995). *See In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (citing *Jumara*, 55 F.3d at 879–80). The movant has the burden to establish that the interests favor transfer. *See Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 436 (D. Del. 2015) (further citation omitted).

The District Court must first decide whether the case could have been brought in the district to which the movant wishes to transfer. *Jumara*, 55 F.3d at 878. If venue would have been proper in that district, the court then weighs whether the public and private interest factors favor transfer, keeping in mind that "plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879 (citations omitted). The private interest factors to consider include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests []include[]: [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy,

expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–80 (citations omitted). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (cleaned up); *see Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at \*4 (D. Del. July 26, 2021). While the plaintiff's forum choice remains "the most important factor[,]" other factors will influence the transfer decision. *Express Mobile, Inc. v. Web.com Grp., Inc.*, 2020 WL 3971776, at \*2 (D. Del. July 14, 2020). "Thus, when a plaintiff has no connection to Delaware other than its choice to sue here and its Delaware incorporation, such a plaintiff's choice will not dominate the balancing to the same extent as it otherwise might." *Id.* (cleaned up).

## IV.   DISCUSSION

Below, the Court finds that dismissal under the Declaratory Judgment Act is unwarranted, but transfer of the proceedings under Section 1404(a) is warranted under *Jumara*.

### A.   Dismissal Under the Declaratory Judgment Act is Unwarranted

This action was the earliest filed between DISH and Plaintiff, since Plaintiff filed the Complaint ten hours before DISH filed its complaint in the Second Utah Action. D.I. 7 at 10 n.7; D.I. 9 at 12 n.12. In a footnote, DISH argues that the Court should ignore the first-to-file rule, given the same-day filing. D.I. 7 at 10 n.7 (collecting cases). However, arguments presented in footnotes are waived. *See, e.g., John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). Moreover, this Court has, on at least one occasion, applied the first-filed rule where a co-pending litigation was brought in another district on the same day (e.g., six hours later). *Roku, Inc. v. AlmondNet, Inc.*, No. CV 21-1035-MN, 2021 WL 5299247, at \*1 (D. Del.

9

Nov. 15, 2021). Under these circumstances, the Court is not convinced that it should decline to apply the first-to-file rule due to the same-day filing. The Court now turns to DISH's substantive arguments.

DISH contends that the Court should dismiss this case or transfer it to Utah under the Declaratory Judgment Act because Plaintiff has engaged in jurisdictional "games." D.I. 7 at 8. DISH first asserts that Plaintiff "ran" to Delaware to file following the dismissal of the NDCA Action without the claims or parties it had joined to the NDCA Action, while those parties moved in the First Utah Action to transfer to Delaware. *Id.* at 9. DISH further argues that the Aylo entities are "coordinating their actions" in an effort to gain a procedural advantage in Delaware, which is "thousands of miles from where the inventions underlying the [Asserted Patents] were conceived, developed, and commercialized and where much of DISH's documentary and testamentary evidence is located." *Id.*

In support of its argument, DISH primarily relies on *Cisco* (D.I. 7 at 9–10), where this Court held that a plaintiff "abused the Declaratory Judgment Act by running to the courthouse at 12:01 a.m. on the day that [the patentee's] patent was released." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, No. CV 21-1365-GBW, 2022 WL 16921988, at *5 (D. Del. Nov. 14, 2022). In *Cisco*, "two equally convenient fora were available to resolve all disputes between [the parties], and [the plaintiff] rushed to the courthouse for the sole purpose of selecting its chosen forum." *Id.* Despite this, however, the Court did not exercise its discretion and dismiss the litigation. *Id.* ("Since the Court does not dismiss the declaratory judgment actions in Case 4, consolidation of all cases would disfavor dismissal of the declaratory judgment actions in Case 5.").

Plaintiff responds to DISH's arguments by claiming that Plaintiff's initial choice in forum in the NDCA Action was proper based on DISH's prior enforcement actions in the NDCA, and

that Plaintiff had no legal basis to sue DISH in Utah when it filed the NDCA Action. D.I. 9 at 7.

Next, with respect to its rationale for choosing Delaware, rather than Utah, in bringing this action,

Plaintiff contends that it was motivated by two factors. First, Plaintiff claims that it was motivated

by DISH's own positions in DISH's NDCA Action briefing on DISH's motion to dismiss or

transfer. *Id.* at 7–9. In the NDCA Action, DISH argued that the case between DISH and Plaintiff

(the NDCA Action) belonged in a separate litigation. *Id.* at 8; D.I. 7-8 at 23 ("Simply put, the case

between DISH and the [First Utah Action Defendants] does not belong together with the [NDCA

Action]."). This separation, DISH argued, was partially predicated on there being "no overlap in

accused infringers, no overlap in accused websites, and overlap of only a single patent" as between

the First Utah Action and the original complaint in the NDCA Action. D.I. 7-8 at 22.

Second, and the crux of Plaintiff's argument, when Plaintiff brought this suit, Delaware

was "the forum with the most (six) pending DISH ABR patent cases all before this Court, including

one that has completed § 101 Motion to Dismiss briefing." D.I. 9 at 8.

Having reviewed and considered the parties' arguments and the context of the parties'

relationship, the Court, in its discretion, will not decline to exercise jurisdiction over this suit under

the Declaratory Judgment Act for a couple reasons.

*First*, like the defendant in *Cisco*, DISH's "willingness to file suit in this forum on a patent

in the same family" demonstrates DISH's willingness to be sued as to those patents. *See Cisco*,

2022 WL 16921988, at \*5. DISH cannot genuinely claim that its adversary is engaged in forum

shopping by seeking out Delaware federal courts when DISH itself has sued numerous litigants in

this district over related subject matter.

*Second*, the facts of *Cisco* are distinguishable. In *Cisco*, the plaintiff brought a declaratory

judgment action *one minute* after a patent was issued within a family that the parties had litigated

extensively over several years. *Cisco*, 2022 WL 16921988, at *5. In this action, however, Plaintiff filed the Complaint seeking a declaratory judgment of non-infringement of the Asserted Patents after the NDCA Action, which sought the same relief, was dismissed. In other words, Plaintiff was once again subject to "the reasonable apprehension created by a patentee's threats and the looming specter of litigation that results from those threats" with respect to the Asserted Patents. *See Elecs. for Imaging*, 394 F.3d at 1347. The circumstances in *Cisco* that gave rise to an abuse of the Declaratory Judgment Act, where a defendant selected its chosen forum when it faced no risk that any meaningful time—much less mere minutes—would elapse between a patent's issuance and the filing of a suit, are not present in the instant action. *See id.*

Thus, the Court is not persuaded that forum shopping was Plaintiff's "only motive for the filing" of this action, *see Genentech*, 998 F.2d at 938, or that the exercise of jurisdiction subverts the text or purpose of the Declaratory Judgment Act. On the contrary, Plaintiff has adequately raised a sufficient basis for its decision, supported by rationale, legitimate grounds.

**B.    Transfer of the Instant Action Under Section 1404(a) is Warranted Under** ***Jumara***

The Court now addresses DISH's alternative motion that this action should be transferred to the District of Utah under 28 U.S.C. § 1404(a). As a preliminary matter, neither side disputes this Court's jurisdiction over the parties or the subject matter of this suit. *See* D.I. 9 at 6–7.

"Venue in a declaratory judgment action for patent noninfringement [] is governed by the general venue statute, 28 U.S.C. § 1391(b) and (c), and not the special patent infringement venue statute, 28 U.S.C. § 1400(b)." *Cisco*, 2022 WL 16921988, at *6 (quoting *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, 2017 WL 3980155, at *6 n.8 (D. Del. Sept. 11, 2017)).

For corporate defendants, venue is proper in "a judicial district in which any defendant resides," whereby a corporation may be deemed to reside "in any judicial district in which such

defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

28 U.S.C. § 1391(b)-(c). The Court of Appeals for the Federal Circuit has recognized that repeated

enforcement can suffice to confer personal jurisdiction. *See, e.g.*, *Radio Sys. Corp. v. Accession,*

*Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) ("Activities of the patentee that relate to the enforcement

or defense of the patent can give rise to specific personal jurisdiction for such an action."). Here,

DISH concedes that it has "purposefully availed itself of [the District of Utah], repeatedly, to

enforce its patent rights." D.I. 7 at 11. Moreover, Plaintiff does not appear to contest that this

action could have been brought in Utah. *See* D.I. 9 at 12–20 (arguing that the *Jumara* factors

weigh "overwhelmingly" in favor of transfer to Utah but not arguing that transfer to Utah would

be impossible because Utah is an improper venue). Accordingly, the Court finds that this action

could have been brought in the District of Utah.

Turning now to *Jumara*, the parties agree that three factors are neutral—Public Factor 1

(Enforceability of Judgment), Public Factor 5 (Public Policies of the Fora), and Public Factor 6

(Familiarity of the Judge), (D.I. 9 at 20; D.I. 7 at 19–20, D.I. 13 at 6 n.5). The Court concurs.

Therefore, and since this action could have been brought in Utah, the Court confines its remaining

analysis to the remaining nine *Jumara* factors.

### 1.    Private Factor 1: Plaintiff's Forum Preference

Courts "normally defer to a plaintiff's choice of forum." *Cobalt Inv. Mgmt., LLC v. Fed.*

*Ins. Co.*, No. CV 24-1074-GBW, 2025 WL 1124367, at *1 (D. Del. Apr. 16, 2025) (quoting

*Jumara*, 55 F.3d at 880). However, a plaintiff's choice of forum is entitled to "less deference . . .

where the cause of action has little connection with the chosen forum." *Titlemax of Delaware,*

*Inc. v. Spicher*, No. CV 24-930-GBW, 2024 WL 5187651, at *3 (D. Del. Dec. 20, 2024); *see*

*Dialect, LLC v. Google, LLC*, No. 23-378-GBW, 2024 WL 1328909, at *1 (D. Del. Mar. 28,

13

2024) ("Thus, when a plaintiff has no connection to Delaware other than its choice to sue here and its Delaware incorporation, such a plaintiff's choice will not dominate the balancing to the same extent it otherwise might."). Additionally, Plaintiff's briefing evinces a preference to avoid litigating in Utah due to Plaintiff's perception of Utah's "known anti-pornography stance" and practical difficulties associated with accessing Aylo's websites in light of certain Utah legislation. D.I. 9 at 2 (referencing another lawsuit brought by DISH against another adult-content provider), *id.* at 14 (citing a "biased jury pool"), *id.* at 19 (similar). On balance, this factor weighs against transfer.

### 2.    Private Factor 2: Defendants' Preference

This factor weighs in favor of transfer. DISH's interest in having this case transferred to the District of Utah is clear from the parties' motion practice.

### 3.    Private Factor 3: Actions Giving Rise to the Claim

DISH argues that this factor favors transfer to Utah because (1) the Asserted Patents originated in Utah, (2) the inventors reside there, and (3) the company that commercialized and developed the Asserted Patents was a Utah company. D.I. 7 at 14. Plaintiff counters by focusing on the fact that its websites are "blocked in Utah and alleged infringing activity is not occurring in Utah." D.I. 9 at 15. In reply, DISH alleges that an unquantified number of Utahans view Plaintiff's sites, and that the alleged infringement occurred *prior* to Plaintiff's decision to block access to their sites in Utah. D.I. 13 at 8. On balance, this factor weighs in favor of transfer.

### 4.    Private Factor 4: Convenience of the Parties

This factor concerns the relative convenience of litigation as between the two forums. Courts consider: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee

district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012) (quoting *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. CIV.A. 12-462 GMS, 2012 WL 3777423, at *6 (D. Del. Aug. 30, 2012)). Here, neither party is physically located in Delaware and several likely witnesses are located in DISH's offices in Utah. *See* D.I. 7 at 15. As for travel, Plaintiff argues Delaware is a significantly easier location for its witnesses located in Montreal, as they can fly directly to Philadelphia and reach Wilmington in roughly two to three hours. D.I. 9 at 16. Conversely, these witnesses would need to travel significantly longer to reach Utah. *Id.*; *cf. Bittan v. BBG, Inc.*, No. CV 24-1008-GBW, 2025 WL 2770032, at *4 (D. Del. Sept. 29, 2025) ("However, it is unreasonable to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties.") (cleaned up) (citation omitted). The parties have not articulated arguments indicating that they could not afford to bear the litigation expense. On balance, this factor is neutral.

### 5.    Private Factor 5: Convenience of the Unavailable Witnesses

Generally, this factor is relevant "only to the extent that the witnesses may actually be unavailable for trial." *MCP IP, LLC v. Velocity Outdoor Inc.*, No. 1:24-CV-00863, 2025 WL 2402796, at *8 (D. Del. Aug. 19, 2025) (quoting *Jumara*, 55 F.3d at 879). According to DISH, several witnesses reside in Utah, outside the subpoena power of the Court, including the prosecuting attorney, certain inventors of the Asserted Patents, and the CEO of the company responsible for the inventions. D.I. 7 at 16–17. Plaintiff cites *Papst Licensing* for the proposition that, "[a]bsent some concrete evidentiary showing that third party witnesses (like the inventors) will be unlikely to testify, the Court cannot give Defendants' argument as to their potential unavailability great weight." D.I. 9 at 17 (quoting *Papst Licensing*, 126 F. Supp. 3d at 443). DISH

raises in reply that "[t]here is no witness outside of Utah with more probative information about the patents-in-suit than the Utah witnesses, who are beyond this Court's subpoena power." D.I. 13 at 8. On balance, this factor weighs in favor of transfer.

> **6.      Private Factor 6: Location of Otherwise Unproduceable Books and Records**

The Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. Most of the documents cited by the parties in briefing are digital files that can be produced in any form, meaning that production of the materials will not be significantly more difficult in either forum. *See Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011) ("Nevertheless, as this Court has repeatedly recognized, 'recent technological advances have reduced the weight of this factor to virtually nothing.'") (quoting *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998)). Accordingly, this factor is neutral.

> **7.      Public Factor 2: Practical Considerations**

This case involves competing practical considerations. First, it is possible that "[c]ases will proceed in both districts regardless of the outcome of this motion." D.I. 7 at 18. Second, at the time of briefing, DISH asserted that there were six cases involving DISH's patent portfolio in Delaware and four in Utah, including the First Utah Action and Second Utah Action. *Id.* On the other hand, as Plaintiff points out, Delaware courts will likely interpret related patents and there are practical "obstacles" pertaining to viewing Aylo's websites in Utah. D.I. 9 at 19.

In evaluating these competing considerations, the Court finds persuasive *Dish Techs. LLC v. WebGroup Czech Republic AS*. No. 2:23-CV-00553-RJS-JCB, 2024 WL 3510312 (D. Utah July 23, 2024). *Dish* involves a case brought by DISH against Czech entities for infringement of the ABR patent portfolio, wherein those defendants moved to transfer the case to Delaware,

16

arguing that "transfer to the District of Delaware would improve the easy, expeditious, and economical adjudication of this case by enabling this case to be consolidated with five similar cases currently pending in that court . . . ." *Id.* at *5. Reviewing the then-existing status of those cases, the court observed that "the crux of Defendants' argument in support of transfer to the District of Delaware as a matter of efficiency and ease has evaporated" because "[t]he District of Utah now appears to be the epicenter of the Plaintiffs' patent defense efforts." *Id.* Moreover, this litigation also shares at least one patent in common with one of the District of Utah litigations. On balance, having thoroughly considered the parties' arguments, this factor is neutral.

### 8.    Public Factor 3: Administrative Difficulty and Court Congestion

DISH contends that this factor is neutral. D.I. 7 at 19–20 (citing D.I. 7-22 (United District Courts – National Judicial Caseload Profile)). Plaintiff argues that the shorter median times to trial and disposition in Delaware weigh against transfer. D.I. 9 at 20. DISH counters, in reply, that the District of Utah has fewer cases per Judge. D.I. 13 at 10. Weighing the shorter times to disposition as against caseload, this factor is neutral. *See Dish*, 2024 WL 3510312, at *5 ("Weighing Delaware's advantages in filing to disposition time and median time from civil filing to trial against Utah's advantages in average pending cases per judge and average weighted filings per judge, the court concludes [the Congestion of Courts] factor is neutral.").

### 9.    Public Factor 4: Local Interests

"In patent litigation, the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope." *Papst Licensing*, 126 F. Supp. 3d at 445 (citing *Graphics Properties Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013)).

DISH contends that the connections between this lawsuit and Utah are enough to shift this factor in favor of transfer, citing *Papst Licensing*. D.I. 7 at 19. *Papst Licensing* does not support DISH's argument. In *Papst Licensing*, the court rejected the argument that, "[b]ecause there are some number of persons (e.g., [d]efendants' employees and third-party witnesses) located in the transferee district with a connection to this case, and none in Delaware, it can be said that the [transferee] has some greater local interest in the case than does Delaware" because the defendant there had not shown that the case had "outsized resonance to the citizens of the transferee district, or that its outcome would significantly impact that district. . . ." *Papst Licensing*, 126 F. Supp. 3d at 445 (collecting cases).[3] The same reasoning applies here. While there are certainly significant connections between the instant litigation and the District of Utah, those connections fall under different aspects of the *Jumara* analysis. Therefore, the court finds that this factor is neutral.

* * *

Following a thorough analysis of the parties' arguments, the Court concludes that one factor weighs against transfer (Plaintiff's preference), three factors weigh in favor of transfer, and eight factors are neutral. Here, the cumulative effect of the various factors, rather than any particular factor or a simple counting of factors, shows that the District of Utah has more significant connections to this case than the District of Delaware. Therefore, the Court concludes that transfer is appropriate.

---

[3] In the cases cited by *Papst Licensing*—*Andrews Int'l* and *Downing*—special circumstances were present that shifted the balance of this factor (e.g., novel considerations of state law or the conduct of a government agency located in the transferee's district). *See id.* (first citing *Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*, C.A. No. 12–775–LPS, 2013 WL 5461876, at *4 (D. Del. Sept. 30, 2013); and then citing *Downing v. Globe Direct LLC*, Civil Action No. 09–693(JAP), 2010 WL 2560054, at *4 (D. Del. June 18, 2010)).

## V.      CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part DISH's Motion to Dismiss Aylo Freesites' Complaint or, Alternatively, to Transfer (D.I. 6).  Because the Court has concluded that transfer of venue to the District of Utah is appropriate in the instant case, it denies-as-moot Plaintiff's Motion to Stay Pending *Inter Partes* Review (D.I. 16).

An Order consistent with this Memorandum Opinion will be entered.